### McCAMPBELL *v.* CUNARD S. S. Co., Limited.

*(Common Pleas of New York City and County, General Term.* February 2, 1891.)

1. INJURY TO EMPLOYE—DEFECTIVE APPLIANCES.

Plaintiff, a longshoreman of some years' experience, while working for defendant steam-ship company, was directed by its stevedore, with another workman, to take a certain four-wheeled platform truck to the deck of a steam-ship, and with it to remove, down an inclined gangway to the wharf, certain drums of caustic soda. Two such drums, weighing 600 pounds each, were placed on the platform of the truck, and a wooden chock was placed on the platform in front of them by the other workman; and, on his telling plaintiff to go ahead, plaintiff, taking hold of the tongue of the truck, started down the gangway, but the chock slipped forward, and the drums rolled off the truck and down the gangway, and injured plaintiff. *Held*, in an action therefor by him against defendant, in which it appeared that the truck was of the kind in common use in such work, and was in good order, and that similar chocks were usually placed in front of such drums to prevent their rolling, and it was not shown that any such accident had happened before, although the same procedure had been in use for years, that, as a matter of law, the appliances used were reasonably safe and suitable; that, although plaintiff had never used platform trucks, and had never trucked drums of caustic soda, defendant was not bound to instruct him in the use of the truck, or to give him notice of peril; the risk, whatever there was, being apparent.

2. SAME—NEGLIGENCE OF FELLOW-SERVANT.

Any negligence in not placing the chock with proper care, or in not leaving the sling with which the drums had been hauled from the hold on them until they reached the wharf, was negligence of plaintiff's fellow-workman, for which defendant was not liable.

Appeal from trial term.

Action by Daniel McCampbell against the Cunard Steam-Ship Company, Limited. Defendant appeals from a judgment for the plaintiff entered on the verdict of a jury, and from an order denying a motion for a new trial.

Argued before BOOKSTAVER, BISCHOFF, and PRYOR, JJ.

*Owen, Gray & Sturges*, (*Frank D. Sturges*, of counsel,) for appellant. *S. F. Hyman*, (*George William Hart, Jr.*, of counsel,) for respondent.

BOOKSTAVER, J. When the plaintiff rested, and again when all the evidence was in, the defendant moved to dismiss the complaint on the following grounds: (1) That there was no evidence to charge defendant with any negligence in supplying a proper and reasonably safe appliance for the work to be done; (2) that the injury was occasioned through the fault of a fellow-employe, if there was any negligence; and (3) that it was one of the risks incident to the employment, which was as apparent to plaintiff as to defendant. These motions were denied, and defendant excepted. These exceptions raise the only questions to be considered on this appeal. The plaintiff was a longshoreman of some years' experience at the time he received the injury. On the morning of August 23, 1883, he was engaged in trucking fruit, etc., on defendants' wharf in this city. After he had been working at this for a short time, Mr. Craven, the stevedore of the defendant, directed him and a longshoreman named Commorford to take a four-wheeled platform truck pointed out to them by him to the deck of the Gallia, then lying at the wharf, and with it to remove certain drums of caustic soda. In order to do this it

was necessary to go down an inclined gangway about 20 feet long, and which was 7 or 8 feet higher where it rested on the vessel than the wharf end of it. When the plaintiff and his co-laborer reached the deck of the new vessel, 2 drums of the soda, weighing 600 pounds each, were placed upon the platform of the truck, and a joist about 4 inches in height, called a "chock," was placed by his fellow-workmen upon the platform in front of the first drum, and similar chocks were inserted between the spokes of the hind wheels in order to lock them while going down the gangway. When everything was adjusted, word was given by his co-laborer to go ahead, and the plaintiff, taking hold of the tongue of the truck, started down the gangway. For some cause the chock slipped forward, and the drums rolled off the truck and down the gangway, catching one of plaintiff's feet, and breaking some of the bones. It was not claimed on the argument that there was any fault in the gangway, or that it was too short, making the incline too steep. The evidence does not show that plaintiff slipped, or had any difficulty in maintaining a firm foothold on account of the incline. According to plaintiff's contention, both at the trial and on the argument of the appeal, the sole negligence of the defendant consisted in the stevedore's direction to plaintiff and Commorford to use a platform truck instead of two-wheeled trucks in doing the work. It is claimed that two-wheeled trucks would have been safe, while the platform truck was not. It is true that, so long as the workman stood upright, a cylindrical body placed on a two-wheeled truck could not roll forward while going down an incline, as the arms of the truck would prevent it. But it must be borne in mind that the articles to be moved were heavy, weighing 600 pounds each; that no part of this weight would have to be supported by the workman using a platform truck, while a considerable part of it would have to be sustained by a workman using a two-wheeled one, especially when going down an incline; that this weight would render him more liable to stumble or slip, and make it harder to recover himself if he did. If he fell the drum would certainly roll forward, and probable over a prostrate man, with the chances in favor of a more serious injury than was suffered in this case. In view of all the facts, it seems to us that a reasonable and prudent man might in the exercise of a sound judgment well have determined not only that a platform truck made the work lighter for the laborer, but safer. If there was any error in judgment in making the selection by a fellow-workman, the master would not be liable. *Kenny* v. *Steam-Ship Co.*, 52 N. Y. Super. Ct. 434. The test of the defendant's responsibility, however, is not whether another truck might have been safer, but whether the one used was reasonably safe and suitable. The defendant was not required to furnish or use the best kind of truck, and cannot be held liable unless its negligence is affirmatively shown to have caused the injury. Negligence in supplying apparatus cannot fairly be inferred where injury cannot reasonably be anticipated from its use. *Burke* v. *Witherbee*, 98 N. Y. 562; *Marsh* v. *Chickering*, 101 N. Y. 396, 5 N. E. Rep. 56; *Sweeney* v. *Envelope Co.*, 101 N. Y. 520, 5 N. E. Rep. 358; *Hickey* v. *Taaffe*, 105 N. Y. 26, 12 N. E. Rep. 286; *Lafflin* v. *Railroad Co.*, (N. Y.) 12 N. E. Rep. 599; *Stringham* v. *Hilton*, 111 N. Y. 188, 18 N. E. Rep. 870; *Byrnes* v. *Railroad Co.*, (N. Y.) 21 N. E. Rep. 50. The platform truck in question was an ordinary flat-top four-wheeled truck, with a long handle, such as is in common use everywhere. As far as the testimony shows, it was in good order, and was of the kind that had been used for years in work like that in which plaintiff was engaged at the time, and yet no previous accident arising from such use is shown. When trucking drums of soda or other cylindrical bodies, wooden chocks or wedges were placed by the laborer in front of the drums to prevent their rolling, and the wheels had also been chocked, just as was done in this case. There is no suggestion that the chocks were not proper and sufficient. The drums did not roll over the one in front of them, but for some cause it

slipped forward on the platform. Whatever that cause might have been, the evidence does not show that any such accident had happened before, although the same procedure had been in use for years; and from the absence of previous accidents we think it must be held as a matter of law that the appliances used were reasonably safe and suitable. But plaintiff claims he had never used platform trucks before for any purpose, and had never trucked drums of caustic soda. If the machinery used by the master is intricate, or the use of it involves peril which is not open and obvious, it is his duty to cause his servants to be properly instructed in its use, and to give them proper notice of the latent peril or defect. But we do not think that a common platform truck can be regarded as in any sense intricate; and the fact that a drum will roll down hill must be apparent to the dullest intellect. The plaintiff was a longshoreman of 10 years' experience; had seen such trucks used, if he had not used them himself, for years; and was, or should have been, familiar with their construction and use. He drew the truck up the gangway, knew he was to draw it down again when loaded, saw it loaded, the chock placed in front of the drums, and understood the reason why they were chocked. If, when he started down the gangway, there was any risk to be anticipated from doing so with the truck so loaded and chocked, it must have been as apparent to him as to the stevedore. Yet he undertook the work, and, we think, must be held to have accepted the risk, whatever it was. *Sweeney* v. *Envelope Co.*, *supra; Cahill* v. *Hilton,* 106 N. Y. 512, 518, 13 N. E. Rep. 339; *McGrath* v. *Walsh,* 4 N. Y. Supp. 705; *De Forest* v. *Jewett,* 88 N. Y. 264, 269. The drums rolled off because the front chock slipped out of place. The experience of years without accident, we think, establishes the reasonable safety of the procedure adopted on this occasion, and that the only fair inference from the evidence is that the chock was not placed in position with proper care. But this was done by Commorford and the gangmen, who were fellow-workmen with the plaintiff, and the defendant is not liable for their negligence. *Ford* v. *Railway Co.,* 117 N. Y. 638, 22 N. E. Rep. 946; *Rose* v. *Railroad Co.,* 58 N. Y. 217; *Besel* v. *Railroad Co.,* 70 N. Y. 171. It also appears from the evidence that Craven, the stevedore, directed plaintiff and his fellow-workmen to leave the sling with which the drums had been hauled from the hold on them until they reached the wharf, which plaintiff and his fellow-workmen neglected to do. It is apparent that, had it been left on them, they could not have rolled so easily, and, even if the chock had not been properly placed, might, and probably would, have prevented the accident. But this was also negligence for which the defendant was not liable. In our judgment, the facts proved on the trial of this action were not such as to warrant a fair and reasonable inference of negligence on the part of the defendant, and that the complaint should have been dismissed. A *scintilla* of evidence, or a surmise that there may have been negligence on the part of the defendant, would not justify the judge in leaving the case to a jury. *Baulec* v. *Railroad,* 59 N. Y. 356, cited in *Dwight* v. *Insurance Co.,* 103 N. Y. 359, 8 N. E. Rep. 654; *Sutton* v. *Railroad,* 66 N. Y. 247; *Hayes* v. *Railroad Co.,* 97 N. Y. 259. Having arrived at this conclusion, it is unnecessary to determine whether or not Craven, the stevedore, was a fellow-workman with plaintiff. The judgment should be reversed, and new trial ordered, with costs to appellants to abide the event. All concur.