### KENNEDY v. JOHN N. ROBINS CO.

(Supreme Court, Appellate Division, Second Department. January 24, 1913.)

1. MASTER AND SERVANT (§ 238\*)—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.

> Where an experienced laborer, ordered to go to the hold of a ship in dry dock to clean the tops of water tanks, knew that the usual means of access was by grabirons, but he attempted to cross over planks, which he knew consisted of the flooring on the tanks, that had been taken up and temporarily laid aside, he could not recover for injuries caused by the breaking of a plank, in the absence of proof of any act or omission of the employer that could have induced a person of ordinary care to conclude that the employer intended to provide a way by a use of the planks, or proof of any direct or implied invitation to use the planks, or proof that the employer knew or should have known at the time of the giving of the order that the grabirons were obstructed.

> [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 681, 743–748; Dec. Dig. § 238.\*]

2. MASTER AND SERVANT (§ 107\*)—INJURY TO SERVANT—LIABILITY.

> Where an employé had no right to assume that a way to his work lay in part over planks, there was no obligation on the employer to make the

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

planks reasonably secure as a way, since it is not negligence to omit a precaution applicable only to a situation not in fact existing.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202, 212, 254, 255; Dec. Dig. § 107.*]

3. APPEAL AND ERROR (§ 1048*)—HARMLESS ERROR—ERRONEOUS RULINGS ON EVIDENCE.

The error in excluding an answer of a witness, on objection to the question made subsequent to the answer, while the remedy was by motion to strike out the answer, was harmless, where the witness was subsequently permitted to testify to the same fact.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4140–4151, 4158–4160; Dec. Dig. § 1048.*]

Appeal from Trial Term, Kings County.

Action by Michael Kennedy against the John N. Robins Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

Arthur J. Levine, of New York City, for appellant.
Edward P. Mowton, of New York City, for respondent.

JENKS, P. J.   The action is brought for negligence, by servant against master, and the former appeals from the judgment entered upon his dismissal at the close of his evidence. The servant, an experienced laborer, was ordered to go to the hold of a ship, in dry dock at the master's shipyard, to clean the tops of ballast or water tanks. He and his fellows descended a hatch by a ladder from the upper deck to the top of the shaft alley, a sort of tunnel. That top was eight feet above the top of the tanks. Access therefrom to the hold, as the plaintiff well knew, was afforded by certain grabirons fixed to the shaft alley. The plaintiff did not use them, for the reason that he found them covered by planks, but undertook, from necessity, he contends, to cross over those planks, so as to reach and then to use the battens to go down to the tanks. The planks gave way under him, and he fell into the hold, to his injury. There is proof that one of the planks was defective. These planks were the flooring over the tanks, which had been taken up, so that the plaintiff could clean the top of the tanks. There were four stanchions on either side of the shaft alley, about eight feet therefrom, towards the wings of the ship. Two of the planks had been lashed to two of the stanchions, and then had been extended therefrom to the top of the shaft alley, so as to support the other planks, which had been placed thereon, parallel to the shaft alley.

[1] The plaintiff had no reason to assume that there was a way furnished by the master across these planks, for he knew that the usual means of access was by these grabirons; and he knew full well that these planks consisted of the flooring on the tanks, that had been taken up and laid aside but temporarily, for his testimony is:

"I saw a lot of planks that was raised off the tanks and put up there like as a bundle, and put there for us to go under there to clean it."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Further:

"The men that took these up used a part of them to make a platform for the rest of them to get them out of the way."

Again:

"These crosspieces were to hold up the rest of the planks and get them out of the way. They made a platform on which they could put the rest of them."

And plaintiff's witness Gillen testifies:

"These planks, these crosspieces, were a part of the floor planking that had been taken up and lashed there for the purpose of piling these other planks on top of them; and when they would take down the other planks they would take down these crosspieces, and use all these planks back again on top of the tanks, I am sure about that."

There is no proof of act or omission of the master that could have induced a person of ordinary care and prudence to conclude that the master had intended to provide a way across these planks. There is no proof of any direct invitation to make such a use. There is no proof that permits the inference that there was any implied invitation. The planks had been taken up recently from their place as flooring by a gang of carpenters. The plaintiff testifies that this gang were "just getting through" when he went down, and, again, "they were still at work when we went down." There was no proof that the defendant or his representative was at or near this place, and consequently no proof that he knew that any one had attempted to cross over the planks. For aught that appears, the manner of putting aside these planks temporarily happened to cover the grabirons. The plaintiff testifies that there were about 20 or 25 of them. While the proof is not entirely clear, there is an indication that the piling of the planks did not fill up the shaft alley, so as to necessarily cover the grabirons. Thus the plaintiff's witness Maxwell, on cross-examination, says:

"I was standing on the shaft alley; not on the alley itself. That was not covered with planks where I stood."

[2] I think that the plaintiff had no legal justification in assuming that a way to his work lay in part across this lumber, and that there was no legal obligation upon the master to make the planks reasonably secure as a way for the servant. See Labatt on Master and Servant, § 28 et seq.; Felch v. Allen, 98 Mass. 572. In the words of Finch, J., writing for the court in Kern v. De C. & D. S. R. Co., 125 N. Y. 50, 25 N. E. 1071:

"It was not negligence to omit a precaution applicable only to a situation which did not in fact exist."

See, too, White v. Eidlitz, 19 App. Div. 256, 46 N. Y. Supp. 184; Preston v. Ocean Steamship Co., 33 App. Div. 194, 53 N. Y. Supp. 444; Young v. Boston & Maine R. R., 69 N. H. 356, 41 Atl. 268.

The plaintiff cannot hold the master for a defective way, in that the latter ordered the plaintiff to go down into the hold. There is no proof that when the order was given there was any obstruction of the grabirons; and, if there were, there is not any proof that the

master knew or legally should have known of such obstruction. Indeed, there is not any proof that he ever knew of it. The plaintiff followed upon the heels of the carpenters, who, as I have shown, had either just finished their work or were still about it when the plaintiff came to the shaft alley. There was no coercion put upon the plaintiff. Sweeney v. Berlin and Jones Envelope Co., 101 N. Y. 520, 5 N. E. 358, 54 Am. Rep. 722; Miller v. Grieme, 53 App. Div. 276, 65 N. Y. Supp. 812. He testifies that he was neither in a hurry nor rushed.

[3] I think that it was not reversible error to exclude the answer of the witness Devine to the question by the plaintiff whether any one was in the hold directing the carpenters. The objection was subsequent to the answer. It was too late, and the remedy was a motion to strike out the answer. Link v. Sheldon, 136 N. Y. 1, 32 N. E. 696. Moreover, the witness was permitted thereafter to answer that:

"There was somebody at the head of that gang of carpenters, that was down in the hold."

And the inquiry was pressed no further. If the plaintiff had attempted to show that the master or his representative had invited plaintiff to cross over the planks, and had been prevented by rulings of the court, another and a serious question would have been presented by the record.

I advise affirmance of the judgment, with costs. All concur.